IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **LIBERTY CORPORATE CAPITAL, LTD.,** | : | |
| | : | |
| Plaintiff, | : | 3:05-CV-115 (CAR) |
| | : | |
| vs. | : | |
| | : | |
| **NU ZETA CHAPTER OF LAMBDA CHI ALPHA FRATERNITY,** an unincorporated association, **TRAVIS STARR, JR.,** individually and as administrator of the estate of Travis Starr, III, | : | |
| | : | |
| Defendants. | : | |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Liberty Corporate Capital, Ltd.'s Motion for Summary Judgment [Doc. 23]. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.

**Legal Standard**

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp., 477 U.S. at 322. A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter

of law.  See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

**Background**

Although the current action is ultimately a coverage dispute between an insurance company and its insured, the Court will first outline the facts precipitating the parties' dispute.

On April 16, 2003, several members of the Nu Zeta Chapter of Lambda Chi Alpha ("Chapter"), including Travis Starr III ("Starr"), entertained a potential pledge, "to entice him to become a member."  (Pl.'s Ex. H, pg. 3, ¶ 5.)  At some point that night, the group patronized several Athens-area bars.  Despite being below the legal age limit, Starr consumed alcohol to the point of intoxication.

In the early hours of April 17, 2003, a sober member of the Chapter, Brett Steele, picked the group up in his pickup truck.  Because the group had now grown to include several girls, Starr elected to ride in the bed of the truck.  Tragically, when the driver made a sudden sharp turn, Starr, partly due to his inebriated state, voluntarily stood up

and fell out of the truck, striking his head on the road. Upon examination by other members of the group, he objectively appeared to be fine. So much so, that the other passengers had no reason to suspect that he had, in fact, suffered a serious head injury. It was not until 20 hours after the incident that his friends took him to an Athens-area hospital to be examined. He was eventually transferred to a hospital in Augusta, where, on April 25, 2003, he passed away from his injuries.

Almost two years later, on March 21, 2005, Starr's parents filed a wrongful-death suit in state court against several defendants, including the Chapter, seeking damages for the death of their son ("underlying action"). According to the Starrs, the Chapter was liable for failing to stop fraternity members, and the Starrs' son in particular, from consuming alcohol while under the legal age limit. The Starrs also averred that the Chapter was liable for Steele's operation of a motor vehicle and the delay in medical treatment.

When the Starrs filed their lawsuit, Lambda Chi Alpha International ("Lambda Chi Alpha") and its numerous chapters, including Nu Zeta, were insured by Liberty. The Insurance Contract ("policy" or "contract"), obligates Liberty to defend and indemnify its insured against lawsuits, such as the one filed by the Starrs, as long as the lawsuit stems from "bodily injury" within the policy's coverage. Believing that the underlying action triggered Liberty's contractual duties, the Chapter timely informed

Liberty of the suit, requesting a defense. Liberty agreed to provide a defense, albeit with a reservation of rights.

Liberty thereafter filed this action asking the Court to find that it owes no contractual duties to the Chapter because the policy does not cover the Starrs' lawsuit. Liberty submits two separate arguments in support of its contention. First, Liberty argues that the Chapter is not an "insured" under the express terms of the insurance contract. Alternatively, if the Chapter is an "insured," then a policy exclusion relating to violations of the "Fraternity Alcohol Policy" bars coverage. The Court will now turn to the merits of those arguments.

## Discussion

The issue before the Court is whether the insurance contract between the Chapter and Liberty covers the defense and indemnity of the Chapter in the underlying action. As previously mentioned, the contract requires Liberty to indemnify and defend its insured as long as the underlying action stems from 'bodily injury' within the insurance's coverage: "[Liberty] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. [Liberty] will have the right and the duty to defend any 'suit' seeking those damages." (Pl.'s Ex. E pg. 43.) An endorsement incorporated into the policy, however,

adds an exclusion, which Liberty contends applies here to bar coverage.[1]

It is well-established that an insurance company may fix the terms of its policies as it wishes, provided they are not contrary to the law. See, e.g., Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co., 619 S.E.2d 704, 706 (Ga. Ct. App. 2005);[2] S. Trust Ins. Co. v. Dr. T's Nature Prod. Co., 584 S.E.2d 34, 36 (Ga. Ct. App. 2003). As such, it may insure against certain risks and exclude others. OHIC Ins. Co., 619 S.E.2d at 706. Generally, exclusions in insurance policies are construed against the insurer. Id. One that is "plain and unambiguous, [however,] binds the partes to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." Id.

In this case, "Endorsement # F" unambiguously excludes coverage for claims which relate to violations of the fraternity's alcohol policy: "**No Duty to Defend, nor any insurance coverage afforded by this policy, shall apply to any claim arising out of or in any way resulting from any '*Violation*' of '*Fraternity Alcohol Policy.*'**" (Pl.'s Ex. E (cont), pg. 46) (emphasis added).

The parties do not dispute that Lambda Chi Alpha had a qualifying "Fraternity

---

[1] Liberty first argues that coverage is barred because the Chapter is not an "insured" within the meaning of the contract. Because the Court finds that Liberty's second argument is dispositive, the Court will assume, without deciding, that the Chapter is, in fact, an "insured" within the meaning of the contract.

[2] A federal court sitting in diversity is required to apply state law as declared by state's highest court. See, e.g., CSX Transp. Inc. v. Trism Specialized Carriers, Inc., 182 F.3d 788, 790 (11th Cir. 1999) (quoting Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

Alcohol Policy" in force at the time of the incident. In 1988, Lambda Chi adopted a Mandatory Resolution on Alcoholic Beverages ("Alcohol Policy") which prohibits consumption of alcohol in conflict with state laws: "The possession[,] consumption, and distribution of alcoholic beverages on the premises of any Chapter . . . or at any environment or function given in the name of, or for the benefit of, Lambda Chi Alpha Fraternity shall not be in conflict with . . . state . . . regulations and policies." (Pl.'s Ex. F, pg. 3.)

The parties do, however, dispute whether a "violation" of that Alcohol Policy occurred. According to the insurance contract, a "violation" of a "Fraternity Alcohol Policy," such as the Alcohol Policy, occurs only when either "the executive board of the National Fraternity Organization" or "legal authority" determines that "some breaking, infraction, or breach of the [Alcohol Policy] occurred." (Pl.'s Ex. E (cont), pg. 46.) It is true that the executive board of the National Fraternity Organization has not determined that a "violation" occurred.[3] It is also true, however, that the contract empowers this Court, as a "legal authority," to make the requisite determination.

In an effort to avoid summary judgment, the Chapter argues that the determination of whether a "violation" of the Alcohol Policy occurred is a factual

---

[3] Liberty argues that the determination requirement was satisfied by a letter from the Executive Vice President of Lambda Chi Alpha International. The letter does, in fact, inform the Chapter of Lambda Chi Alpha International's belief that members' conduct on that night violated the Alcohol Policy. The determination was not, however, made by the "executive board of the National Fraternity Organization" as required by the contract. As such, the letter does not strictly meet the definition of "violation."

inquiry for the jury, not a question of law for the Court to decide.  The Court, however, fails to see a factual dispute that necessitates the involvement of a jury.  In this case, the underlying facts pertaining to this issue are not in dispute; Travis Starr was drinking on the night in question, while under the legal age limit.  The only disputed issue is whether his drinking amounts to a "violation" of the Alcohol Policy which specifically prohibits underage drinking.  The issue then, is not a factual dispute, but rather an interpretive issue to be decided as a matter of law by a court, not a jury.  See <u>Coregis Inc. Co. v. Nelson</u>, -- S.E.2d ----, 2006 WL 3361953 *2 (Ga. Ct. App. 2006) (stating that "[t]he construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity of terms, it is a question of law for the court.") (internal citation omitted).  The Court will now turn to the interpretive issue before it.

After thorough examination of the underlying facts and the express language of the contract, the Court has no doubt that a "violation" of the Alcohol Policy occurred on the night in question.  As previously mentioned, the insurance contract specifically defines "violation" as the "breaking, infraction, or breach" of the Alcohol Policy.  The Alcohol Policy, in no uncertain terms, prohibits consumption of alcohol in contravention of state law. The events of April 16th and 17th, which form the basis of the underlying claim, evidence a breach of that prohibition as Travis Starr, while underage, indisputably consumed alcohol to

the point of intoxication. His actions, therefore, fall squarely within the contract's definition of a "violation."

The contractual history between the parties further convinces this Court that, in adding the Alcohol Policy exclusion, the parties contemplated the exact situation now before the Court. The exclusion in question was added in the late 1990s, when Lambda Chi Alpha, along with other fraternities, agreed to exclude coverage for violations of fraternity alcohol policies in an effort to curb underage drinking by fraternity members. Mandating coverage in this case would, in effect, result in the subsidization of underage drinking, and would, thus directly counter the rationale for adding the exclusion in the first place.

In summary, the Court finds that the unambiguous language of the Alcohol Policy exclusion[4] bars coverage in this case because Starr consumed alcohol in contravention of state laws and Lambda Chi Alpha's Alcohol Policy. As such, the Court finds that a "violation" of the Alcohol Policy has occurred. Accordingly, Liberty's Motion for Summary Judgment [Doc. 23] is **GRANTED**.

**SO ORDERED,** this 13th day of February, 2007.

                                                      S/ C. Ashley Royal
                                                      C. ASHLEY ROYAL
                                                      UNITED STATES DISTRICT JUDGE

EHE/jab

---

[4] The Court recognizes that the exclusion is expansive in scope, but in light of the fact that the parties bargained for this provision, the Court cannot save the Chapter from the bad bargain.